1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFERY A.B.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C23-5681-MLP

ORDER

## I.  INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits ("DIB"). Plaintiff contends the administrative law judge ("ALJ") erred in assessing the medical opinion evidence, his residual functional capacity ("RFC"), and that, based on new evidence submitted to the Appeals Council, the ALJ's step five findings are not supported by substantial evidence. (Dkt. # 14.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born in 1971, has a GED, and worked most recently as a sales route driver. AR at 1347,1352. Plaintiff was injured on the job in 2006, and has not been gainfully employed since his December 2010 onset date. *Id.* at 1496, 1355-58, 3269.

This case has a very lengthy history. In January 2012, Plaintiff applied for DIB, alleging a December 7, 2010 onset date.[1] AR at 178-86, 1437. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 88-97, 99-112, 130-31. After a December 2013 hearing, ALJ Rebekah Jones issued a decision in January 2014 finding Plaintiff not disabled ("2014 decision"). *Id.* at 1487-1527, 1437-53. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. *Id.* at 1-4. Plaintiff appealed to this Court, and, on February 23, 2016, following the parties' stipulation for remanded proceedings regarding all issues and stages of the sequential analysis, the Honorable Brian A. Tsuchida reversed and remanded to the ALJ. *Id.* at 1474-75 (Case No. C15-5465, Dkt. # 22 (W.D. Wash. Feb. 23, 2016)); *see also id.* at 1483-85 (Appeals Council's April 2016 order remanding case pursuant to Judge Tsuchida's order).

On remand, the same ALJ, ALJ Jones, held two hearings: one in September 2017, and a supplemental hearing in July 2018. AR at 1330-1404 (September 2017 hearing); *id.* at 1405-33 (July 2018 hearing). On September 19, 2018, ALJ Jones issued a decision finding Plaintiff not disabled ("2018 decision"). *Id.* at 714-29.

Plaintiff again appealed to this Court, and on October 2020, Judge Tsuchida reversed and remanded to the ALJ. AR at 3399-405 (Case No. C20-5383, Dkt. # 24 (W.D. Wash. Oct. 28, 2020)). The Court found that the ALJ erred in failing to address Listing 1.03 at step three, and

---

[1] Plaintiff's DLI was December 31, 2013; thus, the relevant period spanned from December 7, 2010, through December 31, 2013.

that because Plaintiff's arguments concerning the ALJ's evaluation of medical evidence pertaining to his physical impairments were "tied to the reevaluation of Listing 1.03," on remand, the ALJ was also required to "reassess the medical evidence regarding [P]laintiff's physical problems." *Id.* at 3401. Additionally, the Court further found that the ALJ erred in her evaluation of the September 2013 opinion from treating psychologist, Dr. Edwin Hill, and in her evaluation of the January 2013 opinion from examining psychologist, Dr. Jeffrey Okey. *Id.* at 3401-02. In January 2021, the Appeals Council remanded the case for proceedings "consistent with the order of the court," and the case was reassigned to ALJ Malcolm Ross. *Id.* at 3408.

ALJ Ross held a hearing in May 2022, and subsequently issued a decision finding Plaintiff not disabled in August 2022 ("2022 decision"). AR at 3311-49, 3267-96.

Using the five-step disability evaluation process, ALJ Ross found that Plaintiff has the following severe impairments: status post-foot injury with multiple surgeries and nerve dysfunction, lumbago, and adjustment disorder with depressed and anxious mood. AR at 3269. The ALJ subsequently determined that Plaintiff retained the RFC for sedentary work with additional limitations. *Id.* at 3273. The ALJ found that Plaintiff could not perform his past work, but, relying on the opinion of a VE, found that Plaintiff could perform jobs existing in significant numbers in the economy, including document preparer, sorter, addresser, and eye glass frames polisher. *Id.* at 3295. As a result, the ALJ concluded at step five that Plaintiff was not disabled. *Id.* at 3296.

The Appeals Council declined to assume jurisdiction to review the ALJ's decision. AR at 3258-63. The 2022 decision is thus the Commissioner's final decision.

### III.     LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

### IV.     DISCUSSION

**A.     The ALJ Erred in Evaluating the Medical Evidence**

For claims filed before March 27, 2017, like this case, each of the three types of medical opinions—treating, examining, and non-examining—is accorded different weight. 20 C.F.R. §§ 404.1527, 416.927. Generally, more weight is given to the opinion of a treating physician than to the opinion of a physician who did not treat the claimant. *See Garrison v. Colvin*, 759

F.3d 995, 1012 (9th Cir. 2014). When an ALJ gives a treating physician's opinion less than controlling weight, and the opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for rejecting or discounting the opinion, supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). When a treating physician's opinion is contradicted by another physician, an ALJ must provide "specific and legitimate reasons" for rejecting or discounting the treating physician's opinion, supported by substantial evidence. *Id.* Additionally, the opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and if the opinion is contradicted, the ALJ can reject the opinion only for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.*; *Andrews*, 53 F.3d at 1043.

### 1.   Opinions Regarding Plaintiff's Physical Impairments

#### a.   Treating Physician Dr. Settle

Plaintiff challenges the ALJ's failure to evaluate Dr. Settle's 2013 opinion. As warranted by the parties' arguments, the Court briefly details below the multiple opinions from Dr. Settle.

In January 2011, approximately one month after Plaintiff's alleged December 2010 onset date, Plaintiff began seeing Dr. Stephen Settle, a physiatrist and pain management specialist, for his low back pain, mid back pain, and neck pain following his four surgeries for injuries he sustained on the job in 2006. AR at 373. In February 2011, Dr. Settle diagnosed chronic right-sided sacroiliac pain and chronic right ankle pain status post four surgical procedures. *Id.* at 368. Dr. Settle opined then that Plaintiff "could work in a light duty job which does not require

bending or twisting on a repetitive basis," noting that "until [Plaintiff's] back symptoms are under better control," he "would have difficulty with a job which requires twisting and bending at the waist." *Id.* at 369.

Subsequently, in October 2012, Dr. Settle reviewed an August 2012 opinion from examining physicians, Drs. Gavin Smith and Colm O'Riordan, and disagreed with Drs. Smith's and O'Riordan's opinion that Plaintiff was "medically fixed and stable." AR at 1182. Dr. Settle diagnosed chronic right ankle pain status post four surgeries, chronic low back, mid back and neck pain, chronic right sacroiliac strain, and depression. *Id.* He opined that Plaintiff was unable to work as a sales agent because he "has a very difficult time driving and being able to use his right ankle," and that prolonged sitting aggravates his back pain. *Id.* Dr. Settle opined that Plaintiff needed a job that "allows him to change positions frequently." *Id.*

Nearly one year later, in September 2013, Dr. Settle completed another opinion regarding Plaintiff's physical RFC. AR at 164-69. Dr. Settle opined that as a result of his pain symptoms, Plaintiff's attention and concentration would "constantly" interfere with his ability to perform even simple work tasks, and that he would be incapable of even "low stress" jobs. *Id.* at 165. Dr. Settle explained that his opinion was based in part on Plaintiff's difficulty taking care of himself even at home. *Id.*

Dr. Settle further opined in September 2013 that Plaintiff could walk less than one block absent rest or severe pain, was able to sit for five to ten minutes at a time without needing to adjust positions, and could sit and stand less than two hours in an eight hour workday. AR at 165-66. Dr. Settle additionally stated that every thirty minutes per workday, Plaintiff would need to walk for five to ten minutes, and that Plaintiff would need multiple breaks of approximately one hour per workday. *Id.* at 166. Dr. Settle stated that Plaintiff was capable of rarely lifting and

1    carrying less than ten pounds and that he could never lift and carry more than ten pounds. *Id.* at

2    167. Dr. Settle opined that Plaintiff could never twist, stoop, crouch, climb ladders or stairs, and

3    that he had significant limitations with reaching, handling, and fingering. *Id.* at 168. Dr. Settle

4    noted that instead of "good days" and "bad days," Plaintiff was likely to have "bad days" and

5    "worse days," and that he would miss work for some period of time every day as a result of his

6    impairments or treatment. *Id.*

7          In his 2022 decision, ALJ Ross gave Dr. Settle's 2011 opinion "some weight," noting

8    that the limitations regarding bending and twisting were "generally consistent with the

9    concurrent clinical examination." AR at 3286. However, the ALJ found that Plaintiff was more

10   appropriately limited to work at the sedentary, as opposed to a light duty level. *Id.* at 3287.

11         The ALJ then gave Dr. Settle's 2012 opinion "little weight," finding that the opined

12   limitations regarding sitting and changing positions appeared to have been based on "self-

13   reported symptoms with no corresponding objective evidence to support the limitation." AR at

14   3287. The ALJ additionally found that the opined limitations were inconsistent with the physical

15   therapy and medication management Dr. Settle recommended, which the ALJ labeled

16   "conservative." *Id.*

17         The ALJ, however, appears to have mistakenly failed to evaluate Dr. Settle's 2013 RFC

18   opinion. AR at 3287-89.

19         The Commissioner concedes that the ALJ failed to evaluate Dr. Settle's 2013 opinion but

20   counters that Plaintiff is barred by *res judicata* from raising the issue based on his failure to raise

21   the issue in conjunction with his immediately preceding appeal. (Dkt. # 16 at 4; *see also* Case

22   No. C20-5383, Dkt. # 21.) The Commissioner cites the Ninth Circuit's decision in *Owens v.*

23   *Kaiser Found. Health Plan, Inc.*, in asserting that *res judicata* "bars litigation in a subsequent

action of any claims that were raised or could have been raised in the prior action." 244 F.3d
708, 713 (9th Cir. 2001). However, the Commissioner overlooks that application of the doctrine
also requires "a final judgment on the merits." *Id.* (noting that *res judicata* applicable whenever
there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity
between parties"). Here, there has never been a final judgment on the merits regarding the ALJ's
failure to consider Dr. Settle's 2013 opinion, including in the immediately preceding appeal or in
the earlier 2015 appeal before Judge Tsuchida. Thus, it appears that the Commissioner more
appropriately intends to argue that Plaintiff *waived* this argument by failing to raise it in C20-
5383, and is, therefore, precluded from raising it now.

For the reasons below, the Court finds that Plaintiff's failure to raise the issue on appeal
in C20-5383 did not result in waiver of the issue currently before the Court or otherwise preclude
Plaintiff from raising the issue. First, the Court cannot decide the issue in a vacuum. As
described below, Plaintiff indeed previously raised the very issue in his first appeal, C15-5464,
and the ALJs' failure to consider Dr. Settle's 2013 opinion has been recurring – occurring in
both ALJ Jones' 2014 and 2018 decisions in addition to ALJ Ross' 2022 decision currently on
appeal.[2]

Plaintiff first submitted Dr. Settle's 2013 opinion – the opinion at issue – to ALJ Jones in
September 2013, in the form of an "on the record request" or "OTR," in advance of the first

---

[2] The Court notes that unlike other admitted medical opinion evidence, including Dr. Settle's previous
2011 and 2012 opinions, the Court Transcript Index ("CTI") does not clearly label Dr. Settle's 2013
opinion as medical evidence. Instead, the 2013 opinion remains generically labeled as an "On the Record
Request." (*See* CTI, Exhibit 13B, "On the Record Request, dated 9/26/2013;" *cf.* Dr. Settle's 2011 and
2012 Opinions, CTI, Exhs. "2F" and "33F," labeled as "Evaluation & Follow-up Notes" and "Visit
Notes," respectively, from Dr. Settle). To the extent the Court's CTI is derived from an index of evidence
also utilized by the ALJs, the ambiguous labeling may have played some role in the ALJs' prior failure to
consider the opinion. Accordingly, to better ensure that the future ALJ considers the 2013 opinion, the
Court suggests that it needs to be labeled more clearly in further record indices.

hearing in the case, the December 2013 hearing. *See* AR at 161-69. At the December 11, 2013 hearing, ALJ Jones noted that she had reviewed the opinion and admitted it into evidence, thus making it part of the administrative record. *Id.* at 1491-92. However, in her January 2014 decision, ALJ Jones subsequently failed to evaluate the opinion. *See id.* at 1448.

Plaintiff then sought review by the Appeals Council in March 2014, arguing among other issues, that the ALJ erred when she failed to evaluate Dr. Settle's 2013 opinion. AR at 1-4, 15 (noting that "[w]hile [the opinion]. . . [that had been] submitted with an OTR [on the record] request. . . is in the file. . . it does not appear in the record that it was ever considered"). The Appeals Council denied review. *Id.* at 1-4.

In Plaintiff's subsequent appeal before Judge Tsuchida, Plaintiff explicitly argued that his assessed RFC was not supported by substantial evidence in part because the ALJ failed to consider the September 2013 opinion from Dr. Settle. (C15-5465, Dkt. #17 at 6, 13.) In February 2016, the parties stipulated to a remand on all issues, and, as a result, Judge Tsuchida did not address the issue on the merits. *See* AR at 1474-75.

In ALJ Jones' subsequent 2018 decision, the ALJ referenced the existence of Dr. Settle's 2013 opinion, but again failed to evaluate the opinion. *See* AR at 1305, 1307-08 (noting that Plaintiff "presented to Dr. Settle a five-page questionnaire regarding his chronic pain" in September 2013, but subsequently evaluating only Dr. Settle's 2011 and 2012 opinions). However, that time around, Plaintiff did not challenge the ALJ's 2018 failure to evaluate the opinion in his subsequent petition for review before the Appeals Council or in his 2020 appeal before Judge Tsuchida. *See* AR at 1683-87; C20-5383 BAT, Dkt. # 21. It is unclear to the Court why Plaintiff failed to raise the issue in conjunction with his 2020 appeal.

1    Plaintiff argues that Judge Tsuchida's immediately prior remand was for *de novo*

2  proceedings, and that because the proceedings were *de novo*, there is nothing to prevent Plaintiff

3  from raising the issue on appeal here given the intervening administrative decision. (Dkt. # 17 at

4  2-3.) The Court declines to go as far as to label the most recent proceedings before ALJ Ross "*de*

5  *novo*" proceedings given the procedural history of the case and the scope of Judge Tsuchida's

6  remand order.

7    Nevertheless, the Court finds that the remand ordered by Judge Tsuchida in C20-5383

8  was broad enough to require the ALJ to reconsider and evaluate Dr. Settle's 2013 opinion. AR at

9  3401. That order required the ALJ to reconsider all of the medical opinions regarding Plaintiff's

10  *physical* impairments – not just the particular opinions that Plaintiff specifically challenged in

11  the 2020 appeal. *See id.* (ordering the ALJ on "on remand . . . as part of her assessment of Listing

12  1.03, [to] reassess the medical evidence regarding [P]laintiff's physical problems").[3] Because Dr.

13  Settle's 2013 opinion was a part of the medical evidence that Judge Tsuchida ordered reassessed

14  by ALJ Ross, Plaintiff cannot currently be barred from challenging ALJ Ross' 2022 failure to

15  evaluate and/or explain the weight he afforded Dr. Settle's 2013 opinion.

16    Turning then to the merits, Plaintiff argues that the ALJ's failure to evaluate Dr. Settle's

17  2013 opinion constituted harmful error, contending that the ALJ's findings regarding Dr. Settle's

18  2011 and 2012 opinions do not render consideration of the 2013 opinion harmless because Dr.

19  Settle's 2013 opinion was more "comprehensive" than the 2011 and 2012 opinions and

20  "address[ed] the combined impact of Plaintiff's [mental and physical] impairments." (Dkt. # 14

21  at 6-8.) The Commissioner counters that any error was harmless because the ALJ's rationales for

22

23

---

[3] The Court, however, notes that the same is not the case for the medical opinions regarding Plaintiff's mental impairments. By contrast, Judge Tsuchida's October 2020 remand order specifically stated that remand was for the reevaluation of the particular opinions from Drs. Okey and Hill. *See* AR at 3405.

1    rejecting Dr. Settle's 2011 and 2012 opinions apply "with equal force" to Dr. Settle's 2013

2    opinion. (Dkt. # 16 at 5-6.) The Commissioner further contends that any error was harmless

3    based on the ALJ's reasons for discounting Plaintiff's own testimony. (*Id.* at 6-7.)

4         The Court declines the Commissioner's invitation to evaluate in the first instance Dr.

5    Settle's 2013 opinion. The Commissioner is correct that according to the cited case, *Marsh v.*

6    *Colvin*, the Ninth Circuit has recognized that a harmless error analysis could, in theory, apply

7    when an ALJ erroneously fails to evaluate a treating medical opinion. 792 F.3d 1170, 1173 (9th

8    Cir. 2015). The Commissioner, however, omits that in *Marsh*, the Ninth Circuit also

9    simultaneously reversed and remanded where the district court in that case found the same type

10   of error was harmless. *Id.* at 1173-74. In so holding, the Ninth Circuit suggested that, in practice,

11   the application of the harmless error doctrine to an ALJ's failure to consider a treating medical

12   opinion would very rarely, if ever, be appropriate. *Id*. Specifically, the *Marsh* Court held that

13   while the "district court [in that case] gave persuasive reasons" as to why the ALJ's failure to

14   evaluate a treating opinion was error, "the decision on disability rests with the ALJ and the

15   Commissioner of the Social Security Administration *in the first instance*, not with a district

16   court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3), and holding that where the ALJ failed to

17   consider a treating opinion, the Court could not "confidently conclude" that the error was

18   harmless) (emphasis added).

19         Here, Dr. Settle's 2013 opinion was more expansive than his prior 2011 and 2012

20   opinions that were evaluated by the ALJ. The Court declines to speculate how the ALJ would

21   have weighed the 2013 opinion; and, as a result, it cannot "confidently conclude" that the ALJ's

22   failure to consider the opinion was harmless. *See Marsh,* 792 F.3d at 1174.

23

Additionally, the Court rejects the Commissioner's related invitation that the Court repurpose the ALJ's reasons for rejecting Plaintiff's testimony as reasons that the ALJ may have offered for rejecting Dr. Settle's 2013 opinion had the ALJ in fact considered the opinion. The Court is required to review the ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1225-26 (9th Cir. 2009).

On remand, the ALJ is required to evaluate in the first instance Dr. Settle's 2013 opinion. *See Trevizo*, 871 F.3d at 675.

### b. August 2012 Opinion from Examining Physicians, Drs. O'Riordan and Smith

In August 2012, Plaintiff underwent a medical examination with Dr. O'Riordan, an orthopedic surgeon, and Dr. Smith, a podiatrist, at the request of the Department of Labor and Industries ("DLI") in connection with his workers compensation claim. AR at 839-53. Drs. O'Riordan and Smith reviewed Plaintiff's medical records and conducted orthopedic and podiatric examinations, respectively, in issuing their consolidated opinions. *Id.* at 841-51. The physicians diagnosed status post right ankle lateral ligament multiple reconstructions with residual symptoms, status post gastrocnemius lengthening right ankle, status post excision of the intermediate branch of superficial peroneal and sural nerves, hypersensitivity/neuroma of the intermediate branch of the superficial peroneal and sural nerves, and chronic low back sprain, which were all related to Plaintiff's August 17, 2006 work injury. *Id.* at 851.

Drs. O'Riordan and Smith opined that Plaintiff could not return to his past work. AR at 851. Dr. O'Riordan opined that Plaintiff was able to sit for three hours at a time during an eight-hour workday, for a total of eight hours, but that he could only stand and/or walk for thirty

minutes at a time for a total of one hour during an eight hour workday. *Id.* at 905. He further

opined that Plaintiff was able to lift and/or carry up to five pounds, but that he could only seldom

lift and/or carry six to ten pounds, and could never carry more than ten pounds. *Id.* Dr.

O'Riordan stated that Plaintiff could operate foot controls with his left foot, but that he could

never squat, kneel, crawl, climb, or reach above shoulder level. *Id.* According to Dr. O'Riordan,

Plaintiff could seldom bend. *Id.*

In 2022, ALJ Ross gave the opinion "partial weight" in a ruling that was identical to ALJ

Jones' prior decision in 2018.[4] AR at 3287; *cf. id.* at 1308. In doing so, ALJ Ross found that the

extreme limitations to which Dr. O'Riordan opined were not "wholly consistent with the

longitudinal record," but were instead based upon Plaintiff's self-reports. *Id.* at 3287. In support,

the ALJ stated that there was medical evidence that Plaintiff's ankle was "stable" post-April and

November 2011 surgeries, and that his back pain required only "conservative" physical therapy.

*Id.* Additionally, absent citation or explanation, the ALJ found there was "no evidence" to

support Dr. O'Riordan's postural limitations. *Id.*

Plaintiff contends the ALJ's evaluation of the opinion was not supported by substantial

evidence. (Dkt. # 14 at 15-17.) Plaintiff disputes the ALJ's characterization of Dr. O'Riordan's

opined RFC limitations as based on his self-reports, noting that Dr. O'Riordan's assessed RFC

limitations are much less restrictive than Plaintiff's own testimony. (*Id.* at 15 (citing AR at 841).)

---

[4] Unlike Dr. Settle's 2013 opinion and Dr. Krumins' April 2012 opinion, Plaintiff in fact challenged ALJ Jones' 2018 evaluation of the opinion in his immediately preceding appeal before Judge Tsuchida. (*See* C20-5383, Dkt. # 21 at 9; AR at 1308.) However, as noted above, regarding Plaintiff's physical impairments, Judge Tsuchida broadly ruled on the 1.03 Listing issue and remanded without ruling on the merits of Plaintiff's specific challenges to particular opinions regarding Plaintiff's physical impairments, including Drs. O'Riordan's and Smith's 2012 opinion. *See* AR at 3401 (remand order requiring ALJ as part of their "assessment of Listing 1.03, [to] reassess the medical evidence regarding [P]laintiff's physical problems"– not just the particular opinions that Plaintiff specifically challenged in the 2020 appeal).

1  Plaintiff argues that, instead, Dr. O'Riordan's opinions were based largely on his review of

2  Plaintiff's medical records and his own examination. (*Id.* at 16 (citing AR at 849, 850, 851).) The

3  Commissioner counters that the ALJ reasonably inferred that the opinion was based on

4  Plaintiff's own pain complaints. (Dkt. # 16 at 13.)

5          Comprehensive findings in Drs. O'Riordan's and Smith's fourteen-page opinion refute

6  the ALJ's finding that the opined limitations were based on Plaintiff's self-reports rather than the

7  medical evidence and exam findings. Seven pages of the opinion are devoted to Drs.

8  O'Riordan's and Smith's review of Plaintiff's medical records from August 2006 through March

9  2012. AR at 841-48. An additional three pages are dedicated to detailing the orthopedic and

10  podiatric examinations conducted by the physicians. *Id.* at 849-51. Thus, this was not a specific

11  and legitimate reason for rejecting the opinion.

12          Plaintiff further contends that contrary to the ALJ's reasoning, Drs. O'Riordan's and

13  Smith's notations regarding his "mild pain behaviors" at the particular examinations also did not

14  undermine their ultimate opinion. Plaintiff highlights the abnormal findings made by Dr.

15  O'Riordan, contending that the ALJ erroneously relied on only the physicians' notations most

16  favorable to the ALJ's RFC assessment. (Dkt. # 17 at 8; *see also* AR at 849-51 (abnormal

17  findings).) The Commissioner counters that the ALJ reasonably found that the opinion conflicted

18  with Plaintiff's "mild pain behaviors" during Dr. O'Riordan's exam. (Dkt. # 15 at 13 (citing AR

19  at 849).)

20          Here, the ALJ has cherry-picked the "mild pain" observation from Drs. O'Riordan's and

21  Smith's examinations, improperly ignoring and/or discounting without explanation other

22  abnormal findings. *See, e.g.,* AR at 849-51 (physicians' observations that Plaintiff had neck pain

23  with axial compression and back pain with axial rotation, was limited in flexion and extension of

the spine, had diminished sensation in his left foot and ankle, lacked reflexes in his ankles, and experienced painful tingling in some of his nerves). Additionally, the ALJ ignored the chronic nature of Plaintiff's pain, and that the intensity of his pain fluctuated. The record established that Plaintiff's pain complaints were not infrequent or isolated but regularly occurred over many years. This reason, therefore, was not sufficiently specific or legitimate.

The ALJ's finding that the longitudinal record demonstrated ankle stability and conservative back treatment erroneously parses out symptoms and impairments rather than considering them as a whole. In particular, the ALJ's finding that Plaintiff's ankle was "stable" fails to address the other symptoms that undermined Plaintiff's functional capacity, including his altered gait, decreased right lower extremity strength, diminished sensation, joint hypermobility, tenderness and spasm in the lumbosacral region, and decreased range of motion in Plaintiff's lumbar spine and right ankle. *See* AR at 849-51, 830; *see also* dkt. # 14 at 16; dkt. # 17 at 8. Moreover, even if Plaintiff's treatment for his back pain may be considered conservative, this finding ignores that Plaintiff continued to suffer from a combination of physical impairments – not just back pain. Plaintiff endured at least six surgeries for his ankle-related impairments, which cannot under any circumstances be considered "conservative."

The Court further declines the Commissioner's invitation to scrutinize other portions of the ALJ's decision and manufacture the ALJ's findings as to this reason where none exist. (Dkt. # 16 at 14.) Neither *Kaufmann v. Kijakazi,* 32 F.4th 843, 851 (9th Cir. 2022), nor any other Ninth Circuit precedent permit the Court to make such *post hoc* findings for the ALJ. *See Makenzie M. v. Comm'r of Soc. Sec.*, 2022 WL 2817086, at *1 (W.D. Wash. July 19, 2022) (rejecting similar argument regarding *Kaufmann* and citing *Bray*, 554 F.3d at 1225-26). Accordingly, this reason also is not sufficient.

1       As for ALJ's wholesale rejection of Dr. O'Riordan's postural opinions, Plaintiff

2   accurately notes that the ALJ failed to provide any explanation or citations to the record. *See* AR

3   at 3287 (finding there "is no evidence to support Dr. O'Riordan's opinion that [Plaintiff] could

4   never do overhead reaching or postural activities"). Plaintiff asserts that Dr. O'Riordan's opinion

5   was indeed consistent with some of Dr. Settle's opined postural limitations and was further

6   documented by medical evidence in the record. (Dkt. # 14 at 16-17 (citing AR at 368, 374, 441,

7   2202, 2204, 2207, 2218, 2219)).

8       In opposition, the Commissioner offers an interpretation of Dr. O'Riordan's examination

9   findings that was not offered by the ALJ. (Dkt. # 16 at 14 (asserting reasons for rejecting Dr.

10  O'Riordan's opined postural limitations that were not offered by the ALJ).) Again, the Court

11  declines to make such *post hoc* findings for the ALJ where none exist.

12      Finally, the Commissioner argues that the existence of conflicting opinions from non-

13  examining state agency physician, Dr. Howard Platter, and from non-examining medical expert

14  ("ME"), Dr. Vu, supports the ALJ's partial rejection of the opinion. (Dkt. # 16 at 12 (citing Dr.

15  Platter's October 2012 opinion at AR at 108-09, and Dr. Vu's September 2017 responses to

16  interrogatories and September 2017 and July 2018 testimony at AR at 1339-45, 1409-19, 3011-

17  13).) As Plaintiff notes, this was not a reason offered by the ALJ. *See* AR at 3287. Again, the

18  Court is limited to the reasons actually offered by the ALJ. Moreover, even if the Court were to

19  consider this reason, "[t]he opinion of a non-examining physician cannot by itself constitute

20  substantial evidence that justifies the rejection of the opinion of either an examining physician or

21  a treating physician." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008).

22      Because the ALJ failed to offer sufficiently specific and legitimate reasons for rejecting

23  Drs. O'Riordan's and Smith's opinion, remand is required for the ALJ to reevaluate the opinion.

1          **c.     Treating Physician, Dr. Krumins**

2          Plaintiff additionally challenges ALJ Ross' evaluation of his treating orthopedic surgeon,

3   Dr. Krumins' April 16, 2012 opinion.[5]

4          Dr. Krumins treated Plaintiff from February 2008 to September 2012. AR at 405-20,

5   1149. He performed two ankle surgeries on Plaintiff, both in 2011. *Id.* In April 2012, Dr.

6   Krumins continued to diagnose right ankle excision of the sural nerve/intermediate branch of

7   superficial peroneal nerves, status post right ankle lateral ligament secondary to reconstruction

8   with chronic pain, and right gastrocnemius lengthening. *Id.* at 819-20. At that time, Dr. Krumins

9   offered his opinion regarding Plaintiff's ability to perform one of his past jobs, and reviewed a

10  DLI "job analysis of sales agent/sales representative." *Id.* at 820. Dr. Krumins stated that he

11  "believe[d] [Plaintiff] likely could do this job though [he] would defer approval to additional

12  evaluation and treatment regarding [Plaintiff's] back with Dr. Settle." *Id.* In support, Dr.

13  Krumins noted that the sales representative job was "a light duty position which involves seldom

14  lifting or carrying of [five] pounds or more, [and only] occasionally standing or walking." *Id.*

15         In 2022, ALJ Ross afforded Dr. Krumin's opinion "great weight," construing it to

16  indicate that Dr. Krumins "believed [Plaintiff] could perform the requirements of [his] past job

17  as a sales agent/sales representative."[6] AR at 3287.

18         Plaintiff argues that ALJ Ross erred when he afforded the opinion "great weight" but

19  ignored one of Dr. Krumins' opined limitations: that Plaintiff was only capable of work that

20  required *seldom* lifting of up to five pounds. (Dkt. # 14 at 4 (citing AR at 3287).) Plaintiff argues

21

22  ---

[5] Plaintiff has not previously challenged the ALJ's evaluation of Dr. Krumin's opinion. However, unlike
23  Dr. Settle's 2013 opinion, the Commissioner does not argue that Plaintiff is barred from raising the issue.

[6] All three ALJ decisions afforded Dr. Krumins' opinion "great weight." AR at 1449 (2014 decision); *id.*
at 1307 (2018 decision); *id.* at 3287 (2022 decision).

that the ALJ's RFC is therefore inconsistent with Dr. Krumins' opinion because it allows Plaintiff to lift and carry twice the weight identified by Dr. Krumins. (Dkt. # 14 at 4.) The Commissioner counters that Plaintiff misrepresents the opinion, noting that Dr. Krumins was assessing whether Plaintiff could perform a particular job, but was not generally assessing the functional limitations associated with Plaintiff's physical impairments, or in other words, the most that Plaintiff could do. (Dkt. # 16 at 3.)

While the Court agrees with the Commissioner's interpretation of Dr. Krumin's April 2012 opinion, it nevertheless notes that the opinion, as offered, is not particularly definitive in that Dr. Krumins ultimately deferred to Dr. Settle regarding Plaintiff's ability to perform his past work. *See* AR at 820. And, as the Commissioner concedes, the opinion also does not appear to offer any concrete limitations regarding what Plaintiff could and could not do. *See id.*; *see also* dkt. # 16 at 3 ("There is no indication Dr. Krumins was assessing the *most* [Plaintiff] could do. Instead, he was assessing whether [Plaintiff] could do a specific job.")).

Given that the Court has already determined that remand is appropriate for the ALJ to evaluate Dr. Settle's 2013 opinion and to reconsider and reevaluate the 2012 opinion from Drs. O'Riordan and Smith, on remand, the ALJ should also reconsider Dr. Krumin's April 2012 opinion as it pertains to Plaintiff's physical impairments.

2.   *Opinions Regarding Plaintiff's Mental Impairments*

Plaintiff also challenges ALJ Ross' evaluation of two medical opinions regarding the limitations associated with his mental impairments. Plaintiff previously challenged both opinions in his immediately preceding appeal before Judge Tsuchida, C20-5383. There, Judge Tsuchida found that ALJ Jones' reasons, as set forth in her 2018 decision, were not sufficient as to either

opinion, and reversed and remanded for the ALJ to reassess the two opinions. AR at 3402-03, 3405.

### a.        September 2013 Opinion from Treating Psychologist, Dr. Hill

Dr. Hill began treating Plaintiff in October 2012 for his adjustment disorder, depression, and anxiety. In December 2012, Dr. Hill diagnosed Plaintiff with pain disorder, depression, anxiety disorder, sleep disorder, and personality change with explosive temper and irritability. AR at 1092. He opined that Plaintiff's Global Assessment of Function ("GAF") score was 50.[7] *Id.* In his subsequent September 2013 opinion regarding Plaintiff's mental RFC, Dr. Hill noted that Plaintiff began suffering from his mental impairments in August 2006. *Id.* at 976. Dr. Hill further opined that as a result of his mental impairments and symptoms, Plaintiff's performance in seventeen out of twenty functional categories pertaining to his understanding and memory, sustained concentration and memory, and his social interaction and adaptation would be impacted by his mental health impairments and symptoms for fifteen percent or more of the time during an eight-hour workday. *Id.* at 976-78. Dr. Hill further opined that Plaintiff would be absent, off-task, and unable to complete the workday for thirty percent of the time based on his physical and mental limitations, in combination. *Id.* at 978. In December 2012, Dr. Hill downgraded Plaintiff's GAF to a 48. *Id.* at 979.

In his 2022 decision, ALJ Ross afforded Dr. Hill's opinion "little weight." AR at 3289. ALJ Ross restated several of the same reasons previously provided by ALJ Jones in her 2018 decision for similarly affording the opinion "little weight." *Id.*; *cf. id.* at 1310. However, in his

---

[7] The Global Assessment of Functioning (GAF) is a scoring system for the severity of illness in psychiatry. A GAF score of 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals) or serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (Am. Psychiatric Ass'n 4th ed.) (2003).

2022 decision, ALJ Ross additionally pointed to: (1) Plaintiff's "questionable" performance on Dr. Okey's psychological examination; (2) Plaintiff's "largely unremarkable" mental health treatment; and (3) Dr. Hill's opinion's alleged inconsistency with the medical and psychological records. *Id.* at 3289.

Plaintiff argues that to the extent that ALJ Ross has duplicated the reasons offered by ALJ Jones in 2018, which were previously rejected by Judge Tsuchida, those reasons remain insufficient here. (Dkt. # 14 at 10.) The Commissioner argues that ALJ Ross did not err in relying on or revisiting prior findings. (Dkt. # 16 at 12.)

In his October 2020 order, Judge Tsuchida, in fact, ruled on the merits regarding several of the findings reiterated verbatim by ALJ Ross in 2022. *See* AR at 3403. Judge Tsuchida's ruling on those reasons is *res judicata* in the current proceedings, and the Court will not readjudicate the sufficiency of those reasons. Additionally, as discussed below, the Court further finds that several of the "new" reasons offered by ALJ Ross were simply a rephrasing or reframing of ALJ Jones' prior 2018 findings previously rejected by Judge Tsuchida. The Court addresses below those additional reasons.

In rejecting Dr. Hill's opinion, ALJ Ross pointed to Plaintiff's "questionable" performance on Dr. Okey's January 2013 psychological examination. AR at 3298. In January 2013, psychologist Dr. Okey reviewed Plaintiff's treatment records, examined Plaintiff, and conducted additional mental tests in conjunction with an opinion he offered related to Plaintiff's workers compensation claim. *Id.* at 1071-75. Dr. Okey noted that his "overriding impression" was that he "concur[red] with and endorse[d] Dr. Hill's standing diagnostic impressions and treatment recommendations," and that there was "a great consistency" between Dr. Hill's evaluation and treatment records and Plaintiff's clinical presentation with Dr. Okey. *Id.* at 1074.

1   However, Dr. Okey noted that his own psychometric testing presented an issue as to whether it

2   was "entirely valid" or whether it fit an "exaggerated 'plea for help' type of profile." *Id.* Dr.

3   Okey explained that if his own current testing was valid, it indicated "rather severe

4   psychopathology" such that Dr. Hill should further explore in treatment "psychotic symptoms,

5   the possible presence of a bipolar mood disorder," and "more pervasive, enduring personality

6   issues." *Id.* However, to the extent that Plaintiff's testimony represented a "plea for help," Dr.

7   Okey agreed that Dr. Hill's "working diagnoses" were "accurate and sufficient." *Id.* Dr. Okey

8   considered whether Plaintiff's test results indicated "secondary gain motivation," but found that

9   was *not* the case. *Id.* at 1073. Dr. Okey interpreted Plaintiff's MMPI results to show "severe

10  impairment in cognitive processes." *Id.* at 1074.

11          Like ALJ Jones, with this reason, ALJ Ross suggested Plaintiff engaged in some sort of

12  wrongdoing at his examination with Dr. Okey. However, Judge Tsuchida rejected this very

13  mischaracterization of Dr. Okey's examination, finding that Dr. Okey "did not opine [P]laintiff

14  was in fact malingering." AR at 3402. Judge Tsuchida further found that, at best, Dr. Okey's

15  comments regarding Plaintiff's examination were "equivocal," and that ALJ Jones' finding

16  regarding Dr. Okey's own opinion was "unsupported" because "Dr. Okey did not find Plaintiff

17  was not severely limited because he was exaggerating his symptoms." *Id.* at 3403. Judge

18  Tsuchida found that, "to the contrary, [Dr. Okey] opined [P]laintiff was very impaired." *Id.*

19          The Court agrees with Judge Tsuchida's above findings, which are afforded preclusive

20  effect given that there was no change in Dr. Hill's opinion or the related record evidence during

21  the intervening proceedings before ALJ Ross. Accordingly, this was not a sufficiently specific

22  and legitimate reason to reject Dr. Hill's opinion.

23

Additionally, as noted, ALJ Ross found that Plaintiff's "largely unremarkable" mental health treatment supported his rejection of Dr. Hill's opinion. In support, ALJ Ross cited to Dr. Settle's treatment notes showing that Plaintiff did not begin taking antidepressants for depression until March 2012, and that he did not start therapy with Dr. Hill until October 2012. AR at 3289 (citing *id.* at 824-25).

Plaintiff contends that a lack of mental health treatment does not undermine Dr. Hill's opinion given the nature of his impairments. (Dkt. # 14 at 11.) He argues that the ALJ failed to explain why his lack of treatment pre-March 2012 conflicted with Dr. Hill's opinion. In support, Plaintiff notes that he conceded he felt depressed to Dr. Shadrach in September 2011, even though he had not yet sought treatment for his depression. AR at 436 (asking "[w]ho wouldn't be depressed after going through five years of surgeries? I feel bummed, but I am dealing with it."). Alternatively, Plaintiff argues that even if his mental impairments were not disabling until he sought treatment for them in March 2012, there would nevertheless have been sufficient evidence that he was disabled for at least twelve months during the relevant period, which did not end until December 31, 2013. (Dkt. # 14 at 11.)

The Commissioner counters that a failure to pursue consistent mental health treatment undermines a claim of disability. (Dkt. # 16 at 9.) The Commissioner further contends that, given Plaintiff's 2011 admission to Dr. Shadrach that he had no mental health symptoms, "the dearth of treatment equated with a dearth of disabling symptoms." *Id.*

Previously, in ruling on ALJ Jones' prior 2018 rejection of Dr. Okey's mental opinion, Judge Tsuchida rejected the ALJ's suggestion that the duration of Plaintiff's mental impairment "would not satisfy the Social Security Act's definition of disability." AR at 3403. Judge Tsuchida noted that the ALJ's reasoning "disregard[ed] the fact that [P]laintiff has had *extended*

mental health treatment and problems." *Id.* (emphasis added). ALJ Ross' 2022 finding regarding Plaintiff's "unremarkable" mental health treatment was, in part, simply a repackaging of reasons offered by ALJ Jones in 2018, upon which Judge Tsuchida has already ruled.

Furthermore, in the Ninth Circuit case cited by Plaintiff, *Nguyen v. Chater*, the court recognized that given the nature of mental illness, the onset date does not necessarily correlate with a claimant's first treatment date. (Dkt. # 14 at 11 (citing 100 F.3d 1462, 1464-65 (9th Cir. 1996)).) The *Nguyen* Court recognized that "depression is one of the most underreported illnesses in the country," and "[t]he fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude" that a medical opinion is inaccurate. 100 F.3d at 1465 (reasoning that "those afflicted [by depression] often do not [even] recognize that their condition reflects a potentially serious mental illness").

While *Nguyen* did not set forth a bright-line rule that failure to receive treatment for a mental impairment can *never* provide a legitimate reason for rejecting the opinion of an examining or treating physician, it is on point in Plaintiff's case. *See* 100 F.3d at 1464-65. Here, in rejecting Dr. Hill's opinion, ALJ Ross selectively cited to only one of Plaintiff's September 2011 statements to consulting psychologist Dr. Shadrach, from a time prior to Plaintiff's actual treatment for his anxiety and depression. AR at 3290 (citing *id.* at 436-39) (during his 2011 consultation with Dr. Shadrach, Plaintiff denied having any mental health concerns, but simultaneously acknowledged he felt depressed).

In rejecting Dr. Hill's opinion, ALJ Ross cherry-picked Plaintiff's September 2011 denial of mental health issues to the exclusion of his additional statements to Dr. Shadrach. In doing so, as Plaintiff notes, the ALJ also ignored other consistent medical evidence, including statements

contained in the August 2012 opinion from examining psychologist Dr. Aaron Hunt, whose

opinion the ALJ simultaneously afforded "great weight."[8] AR at 3288, 868-75; *see also id.* at

870 (noting that Plaintiff described the "problems with depression" and moodiness that he began

suffering six years prior to his August 2012 exam).

Moreover, the cases relied upon by the Commissioner are inapposite because they both

involved the *consistency* of Plaintiff's treatment for mental health – which is not at issue in this

case. (*See* dkt. # 16 at 9 (citing *Vela v. Kijakazi*, 2023 WL 8592873 (9th Cir. 2023), and *Matin v.

Comm'r of Soc. Sec. Admin*, 478 F. Appx. 377 (9th Cir. 2012)).) Here, by contrast, the ALJ

faulted Plaintiff not for the consistency of his treatment following March 2012, but instead for

failing to seek out treatment earlier.[9]

Finally, ALJ Ross rejected Dr. Hill's opinion based on its inconsistency with the medical

and psychological record. AR at 3289. In support, the ALJ suggested that Plaintiff's mental

health improved during the relevant period, and that his activities of daily living ("ADLs") were

inconsistent with the limitations opined to by Dr. Hill. *Id.* at 3289-90.

In terms of improvement, ALJ Ross noted that Plaintiff's "depression improved with

Celexa," and asserted that following his treatment with Dr. Hill, Plaintiff's symptoms improved

from October 2012, through his December 2013 DLI. AR at 3289 (citing *id.* at 824-25, 1076-

1131). In support, the ALJ cited Dr. Settle's May 2012 record notes reflecting that Plaintiff

---

[8] In August 2012, Dr. Hunt reported that Plaintiff denied psychiatric problems until after his injury, noting that it was after the 2006 injury when Plaintiff began "to have some problems with depression," including feeling "disappointed in himself behaviorally" as a result of activities that he was no longer able to do and because "he was letting his family down." AR at 870. Dr. Hunt noted that Plaintiff's chronic pain and fatigue interfered with sleep and contributed to Plaintiff's increasing hopelessness. *Id.*

[9] Once Plaintiff began taking medications and receiving therapy for his mental health impairments in 2012, his treatment continued for an extended period of time – including well past Plaintiff's December 2013 DLI. *See* AR at 3289-90; *see also id.* at 2218, 2222, 1197, 1082-83, 1086.

1    "fe[lt] depressed" because he had been unable to "return to work," to "do activities with his

2    children" and "fe[lt] like he's letting his family down." *Id.* (citing *id.* at 824-25).  At that time,

3    Dr. Settle started Plaintiff on a Celexa trial for his depression. *Id.* at 825. The ALJ also cited Dr.

4    Settle's subsequent July 2012 notation that Plaintiff "did find the Celexa helpful," and that he

5    was continuing on the medication. *Id.* at 824. Additionally, the ALJ cited generally to

6    psychologist Dr. Hill's October 2012 through December 2013 treatment notes. *Id.* at 3289 (citing

7    *id.* at 1076-1131).

8         Plaintiff argues that the ALJ mischaracterized the record evidence because he did not

9    experience any sustained improvement in his mental health impairments during the relevant

10   period. Plaintiff acknowledges that the ALJ's cited records in places suggest some "mild relative

11   improvement," but Plaintiff contends that he nevertheless continued to suffer from severe mental

12   impairments and that his functioning did not improve throughout the relevant period. (Dkt. # 14

13   at 12-13 (citing AR at 1082, 1085, 1086-87, 1096-1131).)

14        The Commissioner counters that Plaintiff's improvement was a valid reason for ALJ

15   Ross to reject Dr. Hill's opinion. In addition to the records cited by the ALJ above, the

16   Commissioner additionally cites to examining psychologist Dr. Hunt's August 2012 opinion, AR

17   at 871, 873; Dr. Settle's March 2013 progress notes, *id.* at 1178; and to Dr. Hill's June and

18   September 2013 progress notes, *id.* at 1082-83, 1086.[10] (*See* dkt. # 16 at 10.)

19        In reply, Plaintiff asserts the cited records demonstrate, at best, temporary or minor gains

20   and continue to mischaracterize the bigger picture of Plaintiff's mental impairments. (Dkt. # 17

21   at 7.) The Court agrees.

22

23   ---

[10] Several of the records cited by the Commissioner were not specifically cited by the ALJ in rejecting Dr.
Hill's opinion, but were instead cited by the ALJ in discounting Plaintiff's testimony. (*See* dkt. # 16 at 10
(citing AR at 3281, 3283, 3285).)

1        First, ALJ Ross' finding that Plaintiff's mental health improved during the relevant

2  period is directly contradicted by the ALJ's simultaneous acknowledgement that following

3  Plaintiff's December 2013 DLI, Plaintiff's mental health in fact worsened. AR at 3285

4  (conceding that "[t]he medical record does show a worsening of [Plaintiff's] mental health" after

5  his DLI, but discounting the deterioration). Accordingly, ALJ Ross' finding of improvement

6  during the relevant period, at best, demonstrates that Plaintiff's mental health impairments

7  dramatically waxed and waned during a relatively short period of time. *See id.* at 3285, 1197

8  (Plaintiff's January 2014 emergency room visit – just one month after his December 2013 DLI –

9  during which Plaintiff was treated for depression, suicidal thoughts, anxiety, and a panic attack).

10  This fluctuation itself renders unsupported the ALJ's finding that Plaintiff's improvement during

11  the relevant period undermined Dr. Hill's opinion.

12        Moreover, the ALJ and the Commissioner engaged in cherry-picking, relying on

13  notations in records that evinced only temporary or minor improvement. For example, regarding

14  Dr. Hunt's opinion, the ALJ cited to a single notation that Plaintiff reported that he "felt more

15  relaxed," on Celexa, but then ignored Dr. Hunt's contrary notations from that same record. *See*

16  AR at 870, 872 (noting that Plaintiff remained "disappointed in himself behaviorally," that his

17  depression was "about the same," and that "everything" "just gets him" and he feels "knocked

18  down" and "unmotivated and unworthy"). Drs. Hill's and Settle's records, as cited by the ALJ,

19  additionally indicated that Plaintiff required increases in his psychiatric medications due to

20  worsening depression during the relevant period, and that Plaintiff's depression had actually

21  increased after treatment in June 2013, in accordance with the Beck Depression Inventory. *Id.* at

22  2218, 1086, 1082-83.

23

1      Accordingly, Plaintiff's alleged improvement was not a sufficient reason supported by

2    substantial evidence for discounting Dr. Hill's opinion regarding the functional limitations

3    associated with his mental impairments.

4      Plaintiff also challenges ALJ Ross' reliance on his allegedly "inconsistent" ADLs in

5    rejecting Dr. Hill's opinion, including Plaintiff's hygiene care, yardwork, simple chores, and

6    childcare. AR at 3290. Plaintiff contends that the ALJ failed to explain how the ADLs cited

7    indeed undermined Dr. Hill's opinion, and argues that the ALJ failed to account for additional

8    limitations that Plaintiff experienced while performing his ADLs. (Dkt. # 14 at 14.)

9      The Ninth Circuit recognizes that "the mere fact that a plaintiff has carried on certain

10   daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not

11   in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260

12   F.3d 1044, 1050 (9th Cir. 2001) (citations omitted); *see also Reddick v. Chater*, 157 F.3d 715,

13   722 (9th Cir. 1998) (citations omitted) ("disability claimants should not be penalized for

14   attempting to lead normal lives in the face of their limitations"). "One does not need to be

15   'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1050 (citations omitted).

16   Moreover, this case is unlike *Stubbs-Danielson v. Astrue*, relied on by the Commissioner,

17   because here, Dr. Hill opined that Plaintiff's understanding and memory, sustained concentration

18   and memory, and social interaction and adaptation would be impacted by his symptoms and

19   impairments for *fifteen percent* of the day due to his functional limitations. *See* AR at 976-78

20   (emphasis added); *see also* dkt. # 16 at 11 (citing 539 F.3d 1169, 1175 (9th Cir. 2008)). ALJ

21   Ross failed to account for this part of Dr. Hill's opinion in relying on Plaintiff's ADLs as a

22   reason for discounting the opinion.

23

Finally, the Commissioner counters that the 2011 and 2012 opinions from examining psychologists, Drs. Shadrach and Hunt, respectively, themselves constituted substantial evidence supporting ALJ Ross' rejection of treating psychologist Dr. Hill's opinion. (Dkt. # 15 at 11.) This, however, was not a reason offered by the ALJ for rejecting Dr. Hill's opinion. AR at 3289-90; *see Bray*, 554 F.3d at 1225-26. Moreover, without any further explanation as to why the contrary opinions were more persuasive, the mere existence of contrary opinions was not a sufficient reason to reject treating psychologist Dr. Hill's opinion.[11] *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.")

**b.      January 2013 Opinion from Examining Psychologist, Dr. Okey**

As noted above, in January 2013, Dr. Okey reviewed Plaintiff's treatment records, examined Plaintiff, and conducted additional mental tests in conjunction with his workers compensation claim. AR at 1071-75. Dr. Okey diagnosed major depressive disorder, anxiety disorder, and pain disorder, and assessed Plaintiff's GAF to be "45 to 50." *Id.* at 1071-72. He observed that Plaintiff's mood was "moderately to severely depressed," that his "thought processes appeared somewhat impaired," and that Plaintiff tended to be mistrusting and could be considered "outright paranoid." *Id.* at 1072, 1073-74. While Plaintiff's memory and concentration appeared intact, Dr. Okey observed that his insight was "somewhat limited," and that his judgment and impulse control were "possibly impaired." *Id.* at 1072. Dr. Okey opined

---

[11] The cases cited by the Commissioner do not relieve the ALJ of the burden of stating "specific and legitimate" reasons for discounting a contradicted treating opinion. (*See* Dkt. # 15 at 12.) This case is distinguishable from *Tonapetyan v. Halter*, as relied on by the Commissioner, because, there, the doctor provided "no objective evidence to support his diagnoses, not even a clinical observation." 242 F.3d 1144, 1149 (9th Cir. 2001). That is not the case with Dr. Hill's opinion.

that Plaintiff required additional psychotherapy and psychiatric medication management, and that an "intensive interdisciplinary pain rehabilitation program" would be appropriate. *Id.* at 1074.

In 2022, ALJ Ross afforded Dr. Okey's opinion "little weight," asserting reasons identical to those that ALJ Ross offered for rejecting Dr. Hill's opinion. AR at 3289-90. Accordingly, the Court's above analysis regarding the ALJ's evaluation of Dr. Hill's opinion likewise applies to its assessment of the ALJ's evaluation of Dr. Okey's opinion.

In sum, for the reasons above, remand is required for the ALJ to reevaluate Drs. Hill's and Okey's opinions. Prior to rejecting the opinions, the ALJ is required to provide specific and legitimate reason(s) that have not already been rejected by the Court as insufficient. The Court notes that in reevaluating Dr. Hill's and Okey's opinions, further development of the record may be warranted regarding the onset date of Plaintiff's mental impairments in light of Ninth Circuit precedent suggesting that the first treatment date does not necessarily correlate with the onset date of mental impairments. *See Nguyen,* 100 F.3d at 1464-65.

**B.** **The ALJ Erred at Step Five and is Required to Consider New Evidence on Remand**[12]

---

[12] Plaintiff has challenged the VA's job number data and methodology since the early days of the case, beginning in June 2013 – prior to the ALJ's first 2014 decision. In June 2013, Plaintiff filed a request for a subpoena duces tecum, requesting that the ALJ order the VE to bring documentation to support the VE's job number testimony at the December 2013 hearing, including the VE's relied-upon statistical sources, job analyses or job surveys, and/or pertinent professional articles and publications. *See* AR at 153-56, 157. The ALJ did not specifically address the subpoena request, but instead simply ruled on the record that Plaintiff would be permitted to ask the VE, Kelly Hember, questions regarding her job testimony at the hearing, which Plaintiff did. *Id.* at 1515, 1524-26.

Following the ALJ's subsequent unfavorable January 2014 decision, in March 2014, Plaintiff argued to the Appeals Council that VE Hember's December 2013 testimony failed to satisfy statutory requirements regarding job number data. AR at 16. The Appeals Council denied review. *Id.* at 1. Subsequently, on appeal before Judge Tsuchida, Plaintiff argued that VE Hember erred because the software program that she relied upon did not provide the job number data for discrete job codes. (*See* C15-5465, Dkt. # 17 at 17.) However, because the parties stipulated to remand on all issues, Judge Tsuchida did not rule on the merits of the issue. *See* AR at 1475 (ordering pursuant to parties' stipulation

1    Following ALJ Jones' 2018 unfavorable decision, Plaintiff argued to the Appeals Council

2    that the VE erred regarding his job numbers. AR at 1686. In support, Plaintiff submitted new

3    evidence in the form of an October 2018 declaration from vocational expert, Dr. Joseph Moisan,

4    along with Dr. Moisan's Job Browser Pro printouts. *Id.* at 1689-92. Dr. Moisan stated that the

5    jobs that the ALJ named at step five in her 2018 decision no longer existed in significant

6    numbers in the United States.[13] *Id.* at 1692. Additionally, Dr. Moisan explained the various

7    methods for ascertaining accurate job number data. *Id.* at 1690-92. In particular, Dr. Moisan

8    opined that "[t]o arrive at a number of jobs at both the national level as well as the regional level

9    for a discrete DOT code, a vocational expert has to rely on software programs of which there are

10    two[:] . . . US Publishing and Skill Tran's Job Browser Pro." *Id.* at 1691. Although the Appeals

11    Council ultimately denied review in February 2020, it nevertheless made Dr. Moisan's October

12    2018 declaration and exhibits part of the administrative record. *Id.* at 1207, 1680-707.

13    _____

14    that, among other things, on remand the ALJ will "reassess[] Plaintiff's ability to perform other work at step five and obtain[] supplemental vocational expert testimony, as necessary").

15    Subsequently, in July 2016, on remand, Plaintiff again requested a subpoena duces tecum requiring the VE to provide documents at the subsequent hearing regarding the job numbers identified at
16    step five. AR at 1734-39, 1686. Again, the ALJ did not rule on the request. The ALJ subsequently held two hearings in September 2017 and July 2018, and different VEs testified at each of the hearings. *Id.* at
17    1330-1404 (September 2017 hearing), 1405-1433 (July 2018 hearing); *see also id.* at 1390-1403 (September 2017 testimony from VE William Weiss); AR 1422-33 (July 2018 testimony from VE
18    D.T. North). Plaintiff's counsel examined VE Weiss at the September 2017 hearing regarding the VE's source for job numbers, and VE Weiss stated that he relied on the Bureau of Labor's statistics for national
19    numbers, and "employment security" for local numbers but that he did not utilize Job Browser Pro software for the job numbers. *Id.* at 1402. In September 2018, the ALJ found that Plaintiff was limited to
20    sedentary work, and relied on and adopted VE Weiss' corresponding testimony from the September 2017 hearing that Plaintiff was capable of performing the jobs of table worker, semiconductor bonder, and surveillance system monitor. *Id.* at 1313, 1394-96.

21    [13] In her September 2018 decision, ALJ Jones found that Plaintiff possessed a sedentary RFC, and that, among other limitations, Plaintiff was limited to "simple routine tasks" based on his mental impairments.
22    AR at 1295. ALJ Jones then found that based on that RFC and the VE's testimony, Plaintiff was able to perform the jobs of surveillance systems monitor, semiconductor bonder, and table worker. *Id.* at 1313-
23    14. However, as discussed below, in 2022, ALJ Ross assessed a less stringent RFC than the one assessed by ALJ Jones, and ALJ Ross thus made step five job findings based on that less stringent RFC. *Id.* at 3273, 3294-96.

Plaintiff raised the same step five argument regarding job number data in his second appeal before Judge Tsuchida, citing to Dr. Moisan's 2018 declaration. (C20-5383, Dkt. # 21 at 18.) Judge Tsuchida reversed and remanded for further proceedings at step five for other reasons, and did not address on the merits the job numbers issue. AR 3404 (ordering ALJ to proceed to step five "as appropriate" based on ALJ's errors at step three and in evaluating the medical opinion evidence).

Subsequently, in March 2022, during the third round of proceedings before the ALJs, Plaintiff submitted another request for a subpoena duces tecum, asking ALJ Ross to order the new VE, Jaye Stutz, to bring with him to the May 2022 hearing or to provide counsel in advance with "the specific data sources upon which [the VE] intends to rely to form opinions regarding job numbers in the local, regional, or national economy." AR at 3649-51. In that request, Plaintiff asserted a written, standing objection to the VE's job number testimony, which Plaintiff noted continued despite Plaintiff's stipulation to the qualifications of the VE otherwise. *Id.* at 3650-51; AR 3332 (stipulating that VE Stutz was qualified to testify as a vocational expert at May 2022 hearing). Again, the ALJ did not rule on the request.

At the May 2022 hearing, ALJ Ross posed two different hypotheticals to VE Stutz, inquiring whether there were sedentary positions for Plaintiff that: (1) permitted "detailed but not complex work," AR 3333; and/or (2) permitted only "routine, simple work."[14] AR at 3334-35. VE Stutz opined that, based on the Bureau of Labor Statistics, a person with an RFC allowing for sedentary and "detailed but not complex work" could perform the jobs of document preparer, sorter, addresser, and eyeglass polisher. *Id.* at 3333-35. However, the VE opined that if Plaintiff were limited to only "simple, routine tasks," then "there really wouldn't be competitive work."

---

[14] As noted, ALJ Jones previously assessed a limitation to "routine, simple" work in the prior 2014 and 2018 decisions based on Plaintiff's mental impairments.

1    *Id.* at 3334-35 (noting that the only jobs remaining had "abysmal numbers. . . . like under [one

2    thousand]").

3          Subsequently, in response to examination by Plaintiff's counsel at the May 2022 hearing,

4    VE Stutz confirmed that with respect to the "addresser" job, one of the sources upon which he

5    relied – the Dictionary of Occupational Titles ("DOT") – was last updated in 1977, and that, as

6    of that 1977 update, the addresser job involved handwriting addresses on envelopes or by

7    typewriter, but not by computer. AR at 3340-41. Additionally, the VE acknowledged that the

8    position of "document preparer" was last updated by the DOT in 1986, and that, then, it

9    constituted the microfilming of documents. *Id.* at 3342. However, according to the VE, in 2022,

10   the "document preparer" job involved the electronic scanning of documents. *Id.* at 3342, 3343,

11   3347. Finally, the VE agreed that the "sorter" position was last updated by the DOT in 1977, and

12   that it previously encompassed a bill or sales slip sorter – a job that is now computerized and no

13   longer exists. *Id.* at 3344.

14          In his subsequent August 2022 decision, ALJ Ross dropped ALJ Jones' prior assessed

15   RFC limitation from the 2014 and 2018 decisions that limited Plaintiff to "simple routine tasks."

16   *See* AR at 3273; *but see id.* at 1295 (ALJ Ross finds in 2018, that Plaintiff could "perform simple

17   routine tasks"); *accord id.* at 1441 (ALJ Ross' 2014 decision similarly limited Plaintiff to

18   "unskilled work with simple, routine tasks"). By contrast, ALJ Ross found that Plaintiff was

19   capable of "detailed but not complex work."[15] *Id.* Subsequently, at step five, ALJ Ross found

20

21   ─────────────────────────
     [15] In adopting a less stringent RFC limitation, ALJ Ross avoided the finding of disability warranted by VE
22   Stutz's testimony that there were no jobs if Plaintiff were limited to "simple, routine" work. AR at 3334-
     35. ALJ Ross, however, did not explain the reasons(s) why he found, contrary to ALJ Jones' prior two
23   decisions, that Plaintiff was not in fact limited to "simple, routine" work during the relevant period, but
     instead was capable of "detailed but not complex" work. *See id.* at 3333, 3347, 3267-96. However, the
     Court notes that, given the scope of Judge Tsuchida's remand, ALJ Ross was entitled to make new
     findings regarding Plaintiff's RFC. *See id.* at 3405.

that Plaintiff would have been able to perform the jobs of document prepare, sorter, addresser, and polisher. *Id.* at 3295. In so finding, ALJ Ross also found VE Stutz's testimony complied with the DOT. *Id.*

ALJ Ross' 2022 decision, however, did not specifically address the particular job number or classification issues raised by Plaintiff's March 2022 request for a subpoena and written objections or by Plaintiff's counsel's examination of VE Stutz at the May 2022 hearing. AR at 3295-96. Instead, ALJ Ross summarily found that the DOT's job numbers were "substantial both separately and cumulatively." *Id.* at 3295. In so finding, the ALJ mistakenly stated that "[n]o issues were identified with the past [VE] testimony," and failed to address Dr. Moisan's prior October 2018 declaration regarding job number methodology, which, at that time, was already part of the record. *Id.* at 3295,1689-92, 1207.

Plaintiff again sought review by the Appeals Council, and in September 2022, Plaintiff submitted a second declaration from Dr. Moisan to the Appeals Council. AR at 3481, 3483-86. Plaintiff argued that the ALJ erred in concluding that the jobs of document preparer, sorter, addresser, and eyeglass polisher, existed in substantial numbers. *Id.* at 3481, 3483-86.

In Dr. Moisan's second September 2022 declaration submitted to the Appeals Council, Dr. Moisan explained that the DOT, relied on by the VE at the hearing, "is woefully out of date as it was last updated in 1991." AR at 3484. According to Dr. Moisan, the O*Net, maintained by the Bureau of Labor Statistics, serves as the "reliable" "replacement for the DOT." *Id.* Dr. Moisan further explained that what were once unskilled jobs according to the DOT are now "semiskilled" or skilled" jobs under the O*Net to the extent that they require the use of computers and/or computerized equipment. *Id.* at 3484-85.

Dr. Moisan also opined that, based on the O*Net, the ALJ erred regarding his proffered job numbers for each of the positions. AR at 3483-86. Specifically, Dr. Moisan opined that the document preparer position, for which the ALJ found there were 280,000 jobs in the national economy, has only 15,628 jobs pursuant to the O*Net. *Id.* at 3486. Dr. Moisan further opined that the document preparer position is no longer in existence as it was in 1986, the last time it was updated in the DOT, and that there is no adequate unskilled job substitute for the position. *Id.* at 3485.

As for the "sorter" position, Dr. Moisan opined that according to the O*Net, the job is no longer an unskilled position. AR at 3485. Dr. Moisan stated that the same is the case with the "addresser" position adopted by the ALJ. *Id.* at 3485-86. Instead of the 4,500 jobs found by the ALJ based on the DOT, Dr. Moisan asserted there are only 2,065 jobs, and the position as last updated by the DOT in 1977, is no longer in existence. *Id.* at 3486. Finally, Dr. Moisan stated the O*Net provides that there are only 1,157 eyeglass polisher jobs, as opposed to the 4,000 stated by the ALJ. *Id.*

The Appeals Council considered and exhibited Dr. Moisan's declaration and exhibits, but again denied review, concluding that the new evidence did not provide a basis for changing the ALJ's August 2022 decision. AR at 3259, 3262. Specifically, the Appeals Council found that VE Stutz's testimony was consistent with the DOT, and that the ALJ properly relied on the VE testimony. *Id.* at 3259.

Plaintiff argues in his opening brief that the Appeals Council erred and that the error warrants remand for proper consideration of the new evidence.[16] (Dkt. # 14 at 17.) However,

---

[16] Plaintiff appears to catch this error in his reply brief, acknowledging that he "is not asking this Court to review the Appeal's Council's decision, but to weigh the ALJ's findings in light of the evidence submitted to the Appeals Council." (Dkt. # 17 at 9.)

while this Court may review the new evidence submitted to the Appeals Council, the Court "may not review an Appeals Council decision denying a request for review." *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018) (citations omitted). That is because "[w]hen the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner." *Id.* Accordingly, "the *Appeals Council's* reasoning for denying review is not considered on judicial review." *Id.* (emphasis added).

Instead, where, as here, the Appeals Council "considers" the new evidence "in denying review of the ALJ's decision, [it becomes] part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Commissioner of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012). The issue, therefore, is more appropriately framed as "whether the ALJ's decision remains supported by substantial evidence" in light of the new evidence. *See Williams v. Berryhill*, 2018 WL 6737511, at *3 (W.D. Wash. Apr. 19, 2018). This depends on whether there is a "reasonable possibility" that the new evidence would have changed the outcome of the proceedings. *See Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010).

On the merits, Plaintiff argues that this case is like *White v. Kijakazi,* and that the evidence identifying significantly fewer jobs creates an inconsistency that the SSA has an obligation to resolve. (Dkt. # 14 at 19 (citing 44 F.4th 828 (9th Cir. 2022)).) Plaintiff argues that the new evidence is both "significant and probative" given that it was "produced by widely accepted software and interpreted by a qualified vocational expert," and because it "directly undermines the ALJ's findings." (*Id.*; dkt. # 17 at 9.)

1   The Commissioner counters that VE Stutz's testimony was "inherently reliable" pursuant

2   to *Kilpatrick v. Kijakazi,* and that Plaintiff is not permitted to impeach a VE's testimony with a

3   counter-declaration like he has done in this case. (Dkt. # 16 at 15-16 (citing *Kilpatrick v.*

4   *Kijakazi,* 35 F.4th 1187, 1191, 1194 (9th Cir. 2022), and *Wischmann v. Kijakazi*, 68 F.4th 498

5   (9th Cir. 2022)).)

6   The Court has already determined that remand is required for the ALJ to reconsider the

7   specific medical opinions above. Based on the reconsideration of the medical opinion evidence, a

8   new RFC assessment may be warranted as well. However, the Court finds that regardless of the

9   outcome of the ALJ's evaluation of the medical opinions and resulting RFC assessment on

10  remand, the ALJ is nevertheless additionally required to reassess the step five findings to account

11  for Plaintiff's objections and challenges to the VE's job numbers and related methodology.

12  Although a VE's testimony is "inherently reliable," it is "not incontestable." *Buck v.*

13  *Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). The Court considers "on a case-by-case basis

14  whether new evidence submitted by a claimant is 'meritless or immaterial' or has 'significant

15  probative' value." *Wischmann*, 68 F.4th at 506. In doing so, the Court is required to "tak[e] 'into

16  account all features of [a] vocational expert's testimony, as well as the rest of the administrative

17  record." *White*, 44 F.4th at 835 (quoting *Biestek v. Berryhill,* 587 U.S. --, 139 S.Ct. 1148, 1157

18  (2019)). Where a "vast discrepancy between the VE's job numbers and those tendered by

19  [Plaintiff] is simply too striking to be ignored[,]" such "inconsistency in the record must be

20  addressed by the ALJ." *White*, 44 F.4th at 837 (applying *Buck*, 869 F.3d 1040, and holding that

21  the ALJ erred in failing "to resolve the inconsistency between the job-number estimates provided

22  by White and by the VE").

23

1       The discrepancies highlighted by Plaintiff's 2022 new evidence do not exist in a vacuum,

2   and, in part for that reason, this case is factually distinguishable from the cases relied on by the

3   Commissioner. Notably, the procedural history of this case, which itself includes repeated

4   challenges to multiple VEs' job number methodologies, lay a foundation for Plaintiff's new

5   evidence and instant challenge to the VE's methodology and estimated job numbers. Such a

6   foundation did not exist in either *Kilpatrick* or *Wischmann*. *See Kilpatrick*, 35 F.4th at 1195

7   (noting that the claimant's "counsel's estimated job numbers lacked a sufficient foundation and

8   thus did not warrant the ALJ's further consideration"); *see also Wischmann*, 68 F.4th at 503-05.

9       Here, as noted, at the time of the ALJ's August 2022 decision, the record contained Dr.

10  Moisan's 2018 declaration and Plaintiff's March 2022 objection and request for a subpoena

11  regarding the reliability of the DOT job number data – the very methodology utilized by the VE

12  here. The ALJ, however, failed to specifically address the methodology issue or to otherwise

13  address the objections at the 2022 hearing or in his 2022 decision. This failure was error, and the

14  error was not harmless because it resulted in the unresolved significant disparity in job numbers,

15  as highlighted by Dr. Moisan's subsequent 2022 declaration. *See White*, 44 F.4th at 837.

16      Moreover, unlike *Kilpatrick* and *Wischmann*, here, the alternative job numbers and

17  explanation regarding methodology were not based solely on attorney printouts. *See Kilpatrick*,

18  35 F.4th at 1194-95; *Wischmann,* 68 F.4th at 506-07. Instead, the 2018 and 2022 declarations

19  from Dr. Moisan, a vocational expert himself, render the job number data "probative." *See*

20  *Wischmann,* 68 F.4th at 506-07 (noting that the attorney's letter accompanying the printout in

21  that case provided "no information about how the job numbers were produced"); *Kilpatrick*, 35

22  F.4th at 1194-95 (same). Moreover, the "vast discrepancies" between Dr. Moisan's job numbers

23  and the ALJ's (as based on the VE's testimony) are "significant." *See Buck*, 869 F.3d at 1047.

(holding that where Plaintiff's rebuttal evidence showed that there were only 231 bottling-line attendant jobs, 2,039 bottle-packer jobs, and 26 conveyor-belt maker jobs nationally as compared to VE's testimony that there were 600,000 bottling-line attendant jobs, 8,800 bottle-packer jobs, and 235,000 conveyor-belt maker jobs nationally, remand was required given the discrepancies that were "too striking to be ignored").

Given the above, the Court finds that the record lacks substantial evidence to support the ALJ's step five finding that Plaintiff can perform the jobs of document preparer, sorter, addresser, and polisher, and that such jobs exist in significant numbers in the national economy. *See Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 529 (9th Cir. 2014). On remand, the ALJ is required to address the new evidence and any other relevant record evidence – including but not limited to Dr. Moisan's 2022 declaration and supporting exhibits. In doing so, the ALJ shall resolve any discrepancies between the DOT job numbers, as testified to by the VE, and Plaintiff's proffered job numbers.

**C.    Remedy**

Plaintiff asks the Court to remand to the Social Security Administration ("SSA") for a "*de novo*" hearing. (Dkt. # 14 at 1.) The Court agrees that outstanding issues remain for which further proceedings would be helpful. *See Treichler*, 775 F.3d at 1101. Nevertheless, given that future proceedings will constitute the Commissioner's fourth "bite at the apple," the Court declines such a broad remand order and finds that the lengthy procedural history of this case necessitates specificity regarding the proceedings on remand, as set forth in the below conclusion.

1

## V.    CONCLUSION

2      For the foregoing reasons, the Commissioner's final decision is REVERSED and this

3  case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C.

4  § 405(g). On remand, for the reasons set forth above, the ALJ shall:

5      1.      Evaluate for the first time Dr. Settle's 2013 opinion;

6      2.      Reevaluate Drs. O'Riordan's and Smith's consolidated August 2012 opinion;

7      3.      Reevaluate Dr. Krumin's April 2012 opinion;

8      4.      Revaluate Dr. Hill's September 2013 opinion;

9      5.      Reevaluate Dr. Okey's January 2013 opinion;

10     6.      Reevaluate and reassess Plaintiff's RFC, as warranted by the ALJ's findings on

11  remand regarding the above listed medical opinions;

12     7.      Reevaluate the ALJ's step five findings, including the ALJ's hypothetical to the

13  VE, and, in conjunction with the step five analysis, consider Plaintiff's new evidence along with

14  the additional relevant record evidence regarding Plaintiff's proffered job number data.

15      Dated this 4th day of April, 2024.

16

17  MICHELLE L. PETERSON
    United States Magistrate Judge

18

19

20

21

22

23